**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GRIFFITH SHAW, JR., et al., | CIVIL ACTION NO. 15-8852 (MLC) |
| Plaintiffs, | **MEMORANDUM OPINION** |
| v. | |
| HAYT, HAYT & LANDAU, LLC, | |
| Defendant. | |

**COOPER, District Judge**

## INTRODUCTION

Defendant, the Law Offices of Hayt, Hayt & Landau, LLC ("HHL") move for judgment on the pleadings under Federal Rule of Civil Procedure ("Rule") 12(c). (Dkt. 16; dkt. 16-1 at 1.)[1] Plaintiffs, Griffith Shaw, Jr. and Carolyn Shaw (collectively, "the Shaws") oppose the motion. (Dkt. 18.) The Court, for the reasons that follow, will deny HHL's motion.

## DISCUSSION

### I. FACTUAL HISTORY

#### A. The Parties

HHL "is a non-government corporate party, and [HHL] does not have a parent

---

[1] The Court will cite to the documents filed on the Electronic Case Filing System ("ECF") by referring to the docket entry numbers by the designation of "dkt." Pincites reference ECF pagination.

corporation, nor is there any publically held corporation that owns 10% or more [of] this party's stock." (Dkt. 10 at 1.)[2] HHL "engages in collecting debts … by telephone and mail." (Dkt. 9 at 2.) With respect to the claims in this action, HHL collected funds "on behalf of its client, First American Acceptance Co., LLC[.]" (Dkt. 16-1 at 4.)

The Shaws "are adult individuals who reside in Barnegat, New Jersey[.]" (Dkt. 1 at 1.) Griffith Shaw, Junior (hereinafter, "Shaw, Jr.") has at least one son who is named Griffith Shaw, III (hereinafter, "Shaw, III"). (Dkt. 18 at 3.)[3] Carolyn Shaw is Shaw, III's stepmother. (Id.)

### B. The Judgment and Levy

HHL filed a complaint (hereinafter, "the Complaint") in the New Jersey Superior Court, Ocean County ("Ocean County"), Docket Number DC-007015-11, in 2011. (Dkt. 1 at 2.) The Complaint named "Griffith Shaw" as a defendant, and did not specify whether that defendant was Shaw, Jr. or Shaw, III. (Id.)

Ocean County issued a judgment against "Griffith Shaw" on June 28, 2011. (Id.)[4] After the judgment was entered, Ocean County issued a Writ of Execution Against Goods and Chattels on July 11, 2014 (hereinafter, "7-11-14 Writ of Execution"). (Id.; see also dkt. 16-1 at 2, 4.) The 7-11-14 Writ of Execution directed "a Court Officer … to levy upon the personal property of the judgment debtor, Griffith Shaw of 44 Water Street

---

[2] HHL states that the complaint improperly identifies it as "Hayt, Hayt & Landau, LLC[.]" (Dkt. 9 at 1.)

[3] The parties have not engaged in discovery in this action, and therefore, at this procedural juncture, many facts related to this motion are unclear.

[4] That judgment did not identify "Griffith Shaw" as Shaw, Jr. or Shaw, III. (Dkt. 1 at 2.)

Barnegat, New Jersey." (Dkt. 1 at 2; dkt. 16-1 at 2.) "A court officer served the writ on several banks and accounts in the name of Griffith Shaw with an address of 44 Water Street, Barnegat, New Jersey[,] [and those accounts] were levied upon." (Dkt. 16-1 at 2.)[5] HHL, however, levied upon bank accounts belonging to Shaw, Jr. and Carolyn Shaw with TD Bank (hereinafter, "TD Bank Account") and Capital One Bank (hereinafter, "Capital One Bank Account") on at least three occasions. (Dkt. 1 at 2.) The Court will discuss each garnishment below.

### C.    First Garnishment

HHL garnished the TD Bank Account for the first time "[i]n or around July 2014[.]" (Id.)[6] Thereafter, the Shaws advised HHL "that they were garnishing the wrong parties, and the … funds were ultimately released." (Id.)

### D.    Second Garnishment

The Shaws received a Notice of Garnishment Order with respect to the TD Bank Account on December 29, 2014 ("12-29-14 Garnishment Order"). (Id. at 3.) Thereafter, $549.31 was removed from the TD Bank Account. (Id.) The Shaws responded to the 12-29-14 Garnishment Order by way of letter dated December 30, 2014. (Id.) The Shaws appended a copy of Shaw, Jr.'s social security card "and two bank statements evidencing

---

[5] Based upon the submissions of the parties, it is unclear whether Shaw, III previously resided at 44 Water Street, Bernegat, New Jersey. According to the Shaws, however, HHL knew that Shaw, III "did not live at … [their] Barnegat address." (Dkt. 18 at 5, 13.)

[6] Carolyn Shaw shared both the TD Bank Account and Capital One Bank Account with Shaw, III. (See dkt. 1 at 4 (describing the shared accounts).) It is unclear whether this action concerns two TD Bank accounts, because the Shaws argue that HHL "wrongfully garnish[ed] the same two TD Bank accounts …." (Dkt. 18 at 2.) For the purpose of this motion, however, the Court will reference a single "TD Bank Account."

3

[HHL's] repeated wrongful garnishment" to the letter.  (Id.)

The Shaws filed a Notice of Objection to the second garnishment with Ocean County on January 2, 2015 ("1-2-15 Notice of Objection").  (Id.)  Ocean County scheduled a hearing regarding the 1-2-15 Notice of Objection for January 13, 2015 ("1-13-15 Hearing").  (Id.)

An attorney for HHL requested that Ocean County release the levy and "notify the Bank to return the funds to the [Shaws]" on January 2, 2015.  (Id.)  Thereafter, Carolyn Shaw advised Ocean County "that the funds had been returned to [the TD Bank Account] and the [1-13-15 Hearing] was no longer needed."  (Id.)  The Shaws, after contacting Ocean County, believed the 1-13-15 Hearing "was cancelled due to the return of the funds" and therefore did not appear in court that day.  (Id.)  Nevertheless, Ocean County denied the 1-2-15 Notice of Objection on January 13, 2015.  (Id.)

HHL "filed a Motion to Turn Over Monies Under Levy [with respect to the 12-29-14 Garnishment Order] with the Ocean County Clerk's Office" on January 5, 2015.  (Id.)  Ocean County granted that motion on January 26, 2015.  (Id. at 4.)  Thereafter, the Shaws received a Notice of Garnishment Order dated February 17, 2015 ("2-17-15 Garnishment Order"), and $86.80 was removed from the TD Bank Account.  (Id.)

The Shaws responded to the 2-17-15 Garnishment Order by letter addressed to counsel for HHL dated March 21, 2015.  (Id.)  That letter demanded that HHL return $86.80 to the TD Bank Account.  (Id.)  According to the Shaws, HHL did not return those funds.  (Id.)

4

### E. Third Garnishment

HHL filed "a Motion to Turn Over Monies Under Levy with the Ocean County Clerk's Office" on May 15, 2015. (Id.) A sum of $886.24 was removed from the Capital One Bank Account on July 3, 2015. (Id.) HHL "has since returned the … Capital One funds, by sending … counsel [for the Shaws] checks amounting to $886.24 …." (Dkt. 18 at 5 n.3.) HHL issued those checks on condition that their tender "'shall not be deemed an admission of liability' in this [action]." (Id.) Rejecting a conditional receipt of funds, the Shaws returned those checks to HHL. (Id.)[7]

## II. PROCEDURAL HISTORY

The Shaws filed this action on December 23, 2015. (Dkt. 1.) The complaint contained two counts. (Id. at 5–6.) The first count alleged that HHL violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692–1692p ("FDCPA") by: (1) "using unfair and unconscionable means to collect or attempt to collect a debt, in violation of 15 U.S.C. § 1692f"; and (2) "using false, deceptive or misleading means to collect a consumer debt, in violation of 15 U.S.C. § 1692e." (Id. at 5.)[8] The first count claimed damages, attorneys' fees, interest and costs, and "[s]uch other and further relief as the Court shall deem just and proper." (Id.) The second count alleged that HHL's conduct constituted a "malicious abuse of process and/or the malicious use of process in

---

[7] According to HHL, the Shaws did not provide "any documentation to substantiate their claim that the Capital One [Bank Account] belonged to them rather than to the judgment debtor[,]" Shaw, III. (Dkt. 16-1 at 5.)

[8] The Shaws, in their oppositional papers, also claim that HHL violated "multiple sections of the FDCPA including 15 U.S.C. §[§] 1692e, 1692e(2)(B), e(10), 1692f, and f(1)." (Dkt. 18 at 7.)

5

connection with the wrongful garnishments against [the Shaws]" under New Jersey tort law.  (Id. at 6; see also dkt. 18 at 1.)  The second count claimed regular damages, punitive damages, and "[s]uch other and further relief as the Court shall deem just and proper." (Dkt. 1 at 6.)

HHL filed a motion for judgment on the pleadings under Rule 12(c) on April 12, 2016.  (Dkt. 16; see also dkt. 16-1.)  The Shaws opposed that motion on May 3, 2016. (Dkt. 18.)  The Court will describe and apply the legal standards governing HHL's motion below.

### III. LEGAL STANDARDS

#### A. Rule 12(c)

A party may move for judgment on the pleadings under Rule 12(c) after the pleadings are closed, but early enough so as not to delay trial.  Fed.R.Civ.P. 12(c).  A movant under Rule 12(c) must demonstrate that no material issues of fact exist and that it is entitled to judgment as a matter of law.  Rosenau v. Uniford Corp., 539 F.3d 218, 221 (3d Cir. 2008).  A district court, when reviewing a Rule 12(c) motion, is limited to the facts stated in the pleadings.  Id.  All inferences related to those facts are viewed in the light most favorable to the nonmoving party.  Id.

A court may not consider documents extraneous to the pleadings in support of a 12(c) motion for judgment on the pleadings without converting it to a motion for summary judgment under Rule 56.  Fed.R.Civ.P. 12(d); see also Rose v. Bartle, 871 F.2d 331, 339 n.3 (3d Cir. 1989).  If that conversion occurs, "all parties must be given the opportunity to present material to the court."  Bartle, 871 F.2d at 340.  "The parties can

exercise this opportunity only if they have notice of the conversion." Id.

### B.    The FDCPA

"Congress enacted the FDCPA, 15 U.S.C. §§ 1692–1692p, to address abusive debt collection practices." Rosenau, 539 F.3d at 221. Specifically, Congress sought to combat "[a]busive debt collection practices [that] contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). The FDCPA provides as follows, in relevant part:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: ... (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.
>
> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

15 U.S.C. §§ 1692e–f.

The FDCPA is a remedial statute, and its language is to be construed "broadly, so as to effect its purpose." Brown v. Card Serv. Ctr., 464 F.3d 450, 453 (3d Cir. 2006). The FDCPA "provides consumers with a private cause of action against debt collectors who fail to comply with the Act." Id.; see also 15 U.S.C. § 1692k. A court must analyze "any lender-debtor communications potentially giving rise to claims under the FDCPA … from the perspective of the least sophisticated debtor." Brown, 464 F.3d at 454. That perspective ensures "that the FDCPA protects all consumers, the gullible as well as the

7

shrewd." Id. at 453.  The Court will consider the arguments of the parties, insofar as those arguments concern Rule 12(c) and the FDCPA, below.

## IV.    APPLICATION OF LEGAL STANDARDS

### A.    HHL's Arguments

HHL argues that "whether the levies were or were not wrongful is determined by state law and not the FDCPA."  (Dkt. 19 at 2.)  According to HHL, the 7-11-14 Writ of Execution "issued in [a] manner established by New Jersey law …. for a legitimate purpose, i.e. to enforce a judgment against Griffith Shaw."  (Dkt. 16-1 at 3.)  HHL therefore contends that the Shaws "fail to state a claim of either malicious use of process or malicious abuse of process" because "it is evident from the face of the complaint that there was reasonable cause for a writ of execution to issue against Griffith Shaw …."  (Id. at 3, 15.)

HHL, with respect to the 1-2-15 Notice of Objection, argues that "[n]one of the TD Bank documents filed with the Superior Court or provided to HHL identified the owner of the TD Bank [Account] as Griffith Shaw, Jr."  (Id. at 5.)[9]  See also Sec.I.D, supra (describing the 1-2-15 Notice of Objection).  As to the Capital One Bank Account, HHL contends that the Shaws failed to "claim that the … account belonged to them rather than to the judgment debtor."  (Id.)

---

[9] HHL, with respect to any confusion between bank accounts belonging to Shaw, Jr. and Shaw, III, argues that "[b]y not titling the [relevant] accounts in the name of 'Griffith Shaw, Jr.' … [the Shaws] invited confusion with respect to ownership of the" TD Bank Account and Capital One Account.  (Dkt. 16-1 at 12.)

8

### B.    The Shaws' Arguments

The Shaws contend that HHL "repeatedly and wrongfully garnished [their] bank accounts …." (Dkt. 1 at 1.)  According to the Shaws, "[d]iscovery will shed light on these repeated, intentional, wrongful levies." (Dkt. 18 at 2.)  The Shaws bolster their FDCPA claim on the ground that HHL garnished the TD Bank Account "on at least two occasions after knowing the accounts were held by the father of the judgment debtor, not the debtor." (Id. at 12.)[10]  See also Sec.I.D, supra (describing the garnishments of the TD Bank Account).  The Shaws characterize the garnishments as "harassment" and "willful misconduct" in violation of the FDCPA.  (Dkt. 18 at 1–2.)[11]

### C.    Analysis

The Court finds that material issues of fact remain in this action, and will therefore deny HHL's motion for judgment on the pleadings under Rule 12(c).  The Shaws allege that HHL "deceptively filed a motion asking the state court to enforce the very levy and turnover … of the same TD Bank [A]ccount funds it earlier agreed to release."  (Id. at 9.)  See also Sec.I.D, supra.  HHL concedes that the Shaws "provided several documents … in support of their contention that the levied TD Bank [Account] belong[ed] to" Shaw, Jr., and not the judgment debtor, Shaw, III.  (Dkt. 16-1 at 5.)  Accepting those facts as

---

[10] The Shaws cite to the 1-2-15 Notice of Objection and various correspondence with counsel for HHL as sufficient notice that the TD Bank Account and Capital One Bank Account belonged to Shaw, Jr., and not Shaw, III.  (Dkt. 18 at 2–5.)  See also Sec.I.D, supra.

[11] The Shaws support that characterization on the ground that "[a] regulated debt collector/law firm simply may not use the apparatus of the state court to seize the personal property of a stranger – irrespective of whether the state court procedures would have been correct …." (Dkt. 18 at 12.)

true, as it must, the Court does not find that "no relief can be granted under any set of facts that could be proved" in this action.  Taj Mahal Travel, Inc. v. Delta Airlines, Inc., 164 F.3d 186, 189 (3d Cir. 1998); see also 15 U.S.C. § 1692f ("A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.").  Accordingly, the Court will deny HHL's motion for judgment on the pleadings.

## CONCLUSION

The Court, for the above-stated reasons, will deny HHL's motion for judgment on the pleadings under Rule 12(c).  The Court will issue an appropriate order.


　　　　　　　　　　　　　　　　　　　　 s/ Mary L. Cooper            
　　　　　　　　　　　　　　　　　　　　**MARY L. COOPER**
　　　　　　　　　　　　　　　　　　　　United States District Judge

**Dated:** July 20, 2016