NOT FOR PUBLICATION

RECEIVED
APR 05 2018
AT 8:30_____M
WILLIAM T. WALSH
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

GRIFFITH SHAW, JR. and CAROLYN M. SHAW,

    Plaintiffs,

v.

LAW OFFICES OF HAYT, HAYT & LANDAU, LLC and FIRST AMERICAN ACCEPTANCE CO., LLC,

    Defendants.

Civ. No. 15-8852

OPINION

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter comes before the Court on a motion for partial summary judgment brought by Defendants Law Offices of Hayt, Hayt & Landau, LLC ("HHL") and First American Acceptance Co., LLC ("First American") (collectively, "Defendants"). (ECF Nos. 51, 52.) Plaintiffs Griffith Shaw, Jr. and Carolyn M. Shaw ("Plaintiffs") oppose. (ECF Nos. 55, 56.) The Court has decided the Motion after considering the written submissions without oral argument pursuant to Local Civil Rule 78.1(b). For the following reasons, Defendants' Motion is denied.

## BACKGROUND

Plaintiffs bring this action for misuse of process, abuse of process, and violation of the Fair Debt Collection Practices Act ("FDCPA") against Defendants, a law firm and debt collection agency seeking to enforce a civil judgment. Plaintiffs Griffith Shaw, Jr. and Carolyn Shaw are a married couple who live in Barnegat, NJ, with two infant sons. (Pls.' Suppl.

1

Statement of Disputed Material Facts ("SMF") ¶ 1, ECF No. 56.) Mr. Shaw has an adult son from a previous marriage, Griffith Shaw III. (Am. Compl. ¶ 12.) Defendant First American, which has no employees, is a purchaser of delinquent debts belonging primarily to consumers. (Pls.' Suppl. SMF ¶¶ 59–60.) Defendant HHL is a debt collection law firm representing commercial interests and financial institutions. (*Id.* ¶¶ 61, 64.) Defendants First American and HHL are both owned and managed by Martin Rubin. (*Id.* ¶ 57.)

In February 2011, First American bought a portfolio of debt that had already been sold four times, which included an account belonging to "Griffith Shaw III." (*Id.* ¶ 77.) Mr. Rubin assigned Christopher Fox, an attorney with HHL, the task of collecting on this portfolio. (*Id.* ¶¶ 5, 79.) On April 25, 2011, HHL commenced litigation against "Griffith Shaw" in the Superior Court of New Jersey, Law Division, Ocean County, Special Civil Part. (Defs.' Statement of Undisputed Material Facts ("SMF") ¶ 1, ECF No. 52; Pls.' Suppl. SMF ¶ 80.) Although the underlying bank statements listed the debtor as "Griffith Shaw III," the complaint named defendant "Griffith Shaw," without a suffix. (Pls.' Suppl. SMF ¶ 81.) That court entered judgment against "Griffith Shaw" on June 28, 2011. (Defs.' SMF ¶ 2.) On or about July 17, 2014, the court issued a writ of execution against judgment debtor "Griffith Shaw." (*Id.* ¶ 3.) By letter, HHL requested that Court Officer Jason Rienzo ("Rienzo") serve the writ upon Bank of America, PNC Bank, TD Bank, and Wells Fargo. (*Id.* ¶ 4.) The letter listed the names and local addresses of the banks, but did not identify any specific account numbers, the judgment-debtor's social security number, or the judgment-debtor's date of birth. (Pls.' Suppl. SMF ¶ 84.)

On December 29, 2014, TD Bank identified funds subject to the writ and faxed Rienzo a letter informing him that $3,154.07 had been levied. (*Id.* ¶ 6.) These funds were levied from two accounts—one in the name of "Griffith Shaw" and a joint account in the name of "Griffith Shaw

2

and Carolyn Shaw." (Pls.' Resp. to Defs.' SMF ¶ 7, ECF No. 56.) That night, while attempting to make a purchase at Walgreens, Plaintiff Carolyn Shaw's debit card was turned down for insufficient funds. (Defs.' SMF ¶ 8; Pls.' Suppl. SMF ¶¶ 2–3.) Ms. Shaw checked her TD Bank account balance and realized that a levy had been placed on her account. (Defs.' SMF ¶ 9.) The next day, Ms. Shaw contacted TD Bank's levy department and was told that HHL caused the levy. (*Id.* ¶ 10.) Ms. Shaw realized the levy was improperly placed against Plaintiffs' accounts instead of those belonging to Griffith Shaw III. (*Id.* ¶ 11; Pls.' Resp. to Defs.' SMF ¶ 11.)

Ms. Shaw called HHL and spoke with Mr. Fox, telling him that HHL had levied the wrong account. (Pls.' Suppl. SMF ¶ 5.) HHL informed Ms. Shaw how to have the levy released. (Defs.' SMF ¶ 12.) On December 30, 2014, Ms. Shaw sent HHL a letter containing the requested proof, including a copy of her husband's social security card, two copies of bank statements, and direct deposit forms. (Pls.' Suppl. SMF ¶ 7.) After receiving the documentation, on January 2, 2015, Mr. Fox sent a letter to Rienzo stating, in pertinent part, "we will not be proceeding with a turnover [motion]. Accordingly, please release the levy and notify the bank to return the funds to their customer." (Defs.' SMF ¶ 13.) Both Griffith Shaw and TD Bank were copied on the letter. (*Id.* ¶ 14.) Fox's letter also stated that "[t]he case has not been settled and payments after the levy have not been received." (Pls.' Suppl. SMF ¶ 11.) TD Bank confirmed that the levied funds were released that same day, January 2, 2015. (Defs.' SMF ¶ 15.)

On January 6, 2015, HHL filed a new motion in state court to turn over the already-released funds. (*Id.* ¶ 16.) Plaintiffs contacted Rienzo and told him the January 13, 2015 hearing on that motion was unnecessary since the funds had already been released back to them. (*Id.* ¶ 19.) However, the court subsequently granted the motion to turn over funds as unopposed on January 26, 2015. (*Id.* ¶ 16.) Rienzo accordingly re-served the writ on TD Bank on February 12,

2015. (*Id.* ¶ 20; Pls.' Suppl. SMF ¶ 29.) On February 17, 2015, TD Bank again identified funds in response to the writ and informed Rienzo that $86.80 had been levied. (Defs.' SMF ¶ 21.) TD Bank had once again identified funds belonging to Plaintiffs, not the judgment debtor Griffith Shaw III. (*Id.* ¶ 22.) Plaintiffs again contacted HHL and sent documentation evidencing that the account belonged to Plaintiffs. (*Id.* ¶ 23; Pls.' Suppl. SMF ¶¶ 30–31.)[1]

On March 21, 2015, Plaintiffs mailed HHL another letter requesting return of their funds, as they had not yet been returned. (Pls.' Suppl. SMF ¶¶ 30–31; Pls.' Ex. L, ECF No. 55-12.) On March 23, 2015, Defendants mailed Plaintiffs in New Jersey and Griffith Shaw III in Florida a copy of a Notice of Motion to Turn Over Monies from the February 2015 TD Bank levy. (Pls.' Suppl. SMF ¶ 32; Defs.' Resp. to Pls.' Suppl. SMF ¶ 32; Pls.' Ex. M, ECF No. 55-13.) That Motion was never filed in court. (Defs.' Resp. to Pls.' Suppl. SMF ¶ 32; Defs.' Ex. 17.)

On May 7, 2015, pursuant to the July 2014 Writ and at the instruction of HHL, Rienzo levied $886.24 on a Capital One account belonging to "Griffith Shaw." (Defs.' SMF ¶ 25; *see also* Pls.' Suppl. SMF ¶ 37.) Capital One was not one of the banks specifically requested to be levied by HHL. (Defs.' SMF ¶ 26.) Approximately one week later, HHL filed a notice of motion to turn over funds from the Capital One account. (*Id.* ¶ 27.) The state court granted that motion as unopposed on June 8, 2015. (*Id.*) At no time did Defendants make any attempt to alter the caption of the case to reflect the true judgment debtor, Griffith Shaw III. (Pls.' Suppl. SMF ¶ 43.) Plaintiffs did not request return of these funds at the time.

Plaintiffs filed their federal Complaint on December 23, 2015, alleging: (I) violation of the FDCPA (Compl. ¶¶ 33–34, ECF No. 1) and (II) malicious abuse of process and/or malicious

---

[1] It is unclear whether this TD Bank account was identical to the earlier-levied account, or if it was a second account owned by one or both of the Plaintiffs. (*See* Defs.' Resp. to Pls.' Suppl. SMF ¶ 30; *compare* Defs.' Ex. 5, ECF No. 51-2, *with* Defs.' Ex. 11 (noting different bank reference numbers for each account).)

4

use of process (*id.* ¶¶ 35–40), seeking compensatory and punitive damages and a jury trial. On January 11, 2016, Rienzo levied additional funds from Plaintiffs' TD Bank accounts. (Pls.' Suppl. SMF ¶ 46; *see also* Am. Compl. ¶ 2, ECF No. 24.) Upon learning of the levy, on January 22, 2016, HHL instructed Rienzo to release the levy and to notify the bank to return the funds to Plaintiffs. (Pls.' Suppl. SMF ¶ 47.) On February 25, 2016, HHL sent Rienzo another letter instructing him to notify TD Bank to release the levies and return any funds to Plaintiffs. (Defs.' SMF ¶ 31; *see also* Pls.' SMF ¶ 52; Defs.' Ex. 14.) In that letter, HHL explained, "[w]hile the case has not been settled, we are voluntarily suspending all collection efforts on this account. Please cease collection activity immediately. Kindly release ALL outstanding bank levies at TD Bank in this matter and return the writ of execution to the Court as unsatisfied." (Defs.' Ex. 14.) On April 4, 2016, HHL attempted to return the funds to Plaintiffs, through their counsel, with stated conditions, but Plaintiffs sent the checks back to HHL. (Defs.' SMF ¶ 24; Pls.' Resp. to Defs.' SMF ¶ 24; Defs.' Ex. 16; Pls.' Ex. BB, ECF No. 55-28.) Plaintiffs filed their Amended Complaint on August 5, 2016, including new factual allegations regarding the Capital One levy.

Defendants filed a Motion for Partial Summary Judgment on January 12, 2018, on the state common law claims only. (ECF Nos. 51, 52.) After a single cycle adjournment, Plaintiffs filed opposition on February 20, 2018. (ECF Nos. 55, 56.) After a second adjournment, Defendants replied on March 5, 2018. (ECF No. 59.) The Court now considers the Motion.

## LEGAL STANDARD

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it will "affect the outcome of the suit under the governing law." *Id.* When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983); *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002).

Summary judgment is inappropriate when a party's knowledge or other mental state is at issue, "because evaluating state of mind often requires the drawing of inferences from the conduct of parties about which reasonable persons might differ." *Justofin v. Metro. Life Ins. Co.*, 372 F.3d 517, 524 (3d Cir. 2004), *as amended* (Aug. 12, 2004). In resolving a motion for summary judgment, a district court considers the facts drawn from "materials in the record," including depositions, documents, affidavits, and declarations. Fed. R. Civ. P. 56(c)(1)(A). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## ANALYSIS

I. <u>Malicious Use of Process</u>

To establish a claim for malicious use of process, Plaintiffs must prove that:
(1) Defendants instituted a civil action against them, (2) the action was motivated by malice, (3) there was an absence of probable cause to prosecute, (4) the action was terminated in Plaintiffs' favor, and (5) Plaintiffs suffered a special grievance—an interference with their liberty or property. *LoBiondo v. Schwartz*, 970 A.2d 1007, 1022 (N.J. 2009); *Klesh v. Coddington*, 684 A.2d 530, 533 (N.J. Super. Ct. 1996), *aff'd and remanded*, 684 A.2d 504 (N.J. App. Div. 1996).

Defendants primarily challenge elements two through four: actual malice, absence of probable cause, and that the action was terminated in Plaintiffs' favor. In challenging elements three and four, Defendants raise an implicit attack on element one as well; by arguing that Plaintiffs were swept up in a levy stemming from a writ of execution related to a lawful proceeding against someone else, Defendants essentially disclaim ever instituting a civil action against Plaintiffs. (*See, e.g.*, Defs.' Br. at 11, 14; *see also* Defs.' Reply at 5–6.)

As a threshold inquiry, the Court must resolve whether Defendants instituted a "civil action" within the meaning of the tort of malicious use of process. Both parties agree on a general skeleton of the facts here: Defendants meant to collect on a debt owed by Griffith Shaw III; they filed a civil action and obtained a judgment against "Griffith Shaw;" they sought a writ of execution, including authorization to levy accounts at four banks; and Plaintiffs' funds were erroneously and/or improperly levied pursuant to that writ. (*See, e.g.*, Pls.' Br. at 5; Defs.' Br. at 11–12.) Plaintiffs argue that Defendants commenced garnishment proceedings against Plaintiffs through an enforcement action, which ended in their favor once the writ was withdrawn by HHL; Defendants argue that Plaintiffs were simply swept up as Defendants sought a remedy in a civil action against someone else. (*See* Defs.' Br. at 11; *see also* Pls.' Br. at 7–8.)

Citing out-of-jurisdiction cases, Plaintiffs argue that "[e]xecution proceedings against a third party can give rise to a malicious use of process claim regardless of the validity of the underlying judgment." (Pls.' Br. at 8 (citing *Keys v. Chrysler Credit Corp.*, 494 A.2d 200, 205 (Md. 1985) (initiation of an attachment); *Todd v. Weltman, Weinberg & Reis Co., L.P.A.*, 434 F.3d 432, 445–46 (6th Cir. 2006) (initiation of a garnishment proceeding)).) However, these cases do not concern execution proceedings against a *third party*—rather, they concern execution

proceedings against the person named in the underlying civil judgment, where the execution proceeding was invalid but the judgment itself was validly obtained.[2]

Nevertheless, the fact that the writ of execution and levy were brought against a third party should not be dispositive for whether they may be considered a civil action within the meaning of the tort. Comment f to § 674 of the Restatement (Second) of Torts notes that:

> A particular civil proceeding may be ancillary to other proceedings. . . . Even though the principal proceedings are properly brought, the ancillary proceeding may be wrongfully initiated. In this case the wrongful procurement and execution of the ancillary process subjects the person procuring it to liability . . . . If the ancillary proceedings are ex parte, the person against whom they are brought need not prove a termination of proceedings favorable to him.

Restatement (Second) of Torts § 674 cmt. f (Am. Law. Inst. 1977); *see also id.* § 674(b). A proceeding is considered ex parte when "relief is granted without an opportunity for the person against whom the relief is sought to be heard." *Id.* § 674 cmt. k; (*see also* Pls.' Br. at 8 n.2). Plaintiffs essentially argue that the writ of execution and the attendant levies here constituted an ex parte ancillary proceeding, initiated by Defendants against Plaintiffs. This element is sufficiently supported in the law to withstand summary judgment.

Turning next to whether the prior proceeding was terminated in Plaintiffs' favor, Defendants argue that Plaintiffs have not contested any process in the underlying civil case and it could not terminate in their favor because the case was never brought against them. (Defs.' Br. at 10; Defs.' Reply at 11–13.) Plaintiffs respond with arguments in the alternative that (1) HHL's voluntary withdrawal of the writ constitutes favorable termination (Pls.' Br. at 8–9 (citing case

---

[2] At least one court in this Circuit has determined that a levy and garnishment of a bank account made by way of mistaken identity violates the account holder's due process rights, *Nat'l Stabilization Agreement of Sheet Metal Indus. Tr. Fund v. Evans*, 71 F. Supp. 2d 427, 431 (M.D. Pa. 1999) (garnishment against nephew of uncle judgment debtor with similar name), but that supported dissolving the writ of execution, not a subsequent action for malicious use of process.

8

law finding favorable termination when criminal charges withdrawn)) or (2) they need not prove favorable termination since this was an ex parte proceeding (Pls.' Br. at 8 n.2). It is not clear that New Jersey has adopted the Restatement rule that individuals need not prove favorable termination when the proceedings are ex parte, but the Court need not reach this question on the facts presented. HHL's recall of the writ of execution, which was applied against Plaintiffs' accounts, constitutes favorable termination to surmount summary judgment. *See, e.g., Zebrowski v. Wells Fargo Bank, N.A.*, 657 F. Supp. 2d 511, 524 (D.N.J. 2009) ("[A] malicious use of process claim . . . survive[d] summary judgment when . . . the foreclosure action was withdrawn as to the particular plaintiff before payment was made to the defendants."). Though the recall was not requested until after Plaintiffs filed litigation, and therefore might be seen as an offer to compromise and insufficient termination,[3] it was requested unilaterally and voluntarily by HHL (*see* Defs.' Ex. 14), was not made in connection with a settlement attempt by Plaintiffs, and happened before Plaintiffs filed their Amended Complaint, which presently governs this action. The fourth element is sufficiently supported to withstand summary judgment.

Defendants most fervently contest the malice and probable cause elements, arguing that their case was lawfully filed but resulted in a series of unfortunate mistakes and isolated events. (*See, e.g.*, Defs.' Br. at 12 n.5, 13–14.) The parties genuinely dispute whether Defendants had a responsibility to correct the missing suffix in the name of the judgment-debtor, either before filing the writ of execution or once the erroneous TD account levy was brought to their attention. (*Compare* Pls.' Suppl. SMF ¶¶ 13–21, 27–28, *with* Defs.' Resp. to Pls.' Suppl. SMF ¶¶ 13–21,

---

[3] "Whether a withdrawal or an abandonment constitutes a final termination of the case in favor of the person against whom the proceedings are brought . . . depends upon the circumstances under which the proceedings are withdrawn. In determining the effect of withdrawal the same considerations are decisive as when criminal charges are withdrawn[.]" Restatement (Second) of Torts § 674.

27–28, ECF No. 59-1.) This knowing failure to correct is the basis for Plaintiffs' claims of malice and lack of probable cause for the writ of execution and continuing levies; in response, Defendants assert that all errors stemmed from inadvertence, not malice, and that they were acting with probable cause against judgment-debtor "Griffith Shaw." The questions of malice and lack of probable cause are somewhat collapsed by the facts in this case, and rely on the resolution of disputed material facts. Moreover, a finding of malice is a mental state issue which requires the drawing of inferences upon which reasonable people could differ, and is therefore better left to a jury. *See Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007) ("Issues such as intent and credibility are rarely suitable for summary judgment."). Resolving all doubts in favor of the nonmoving party, Defendants' Motion for Partial Summary Judgment on Plaintiffs' malicious use of process claim is denied.

## II. Abuse of Process

The two essential elements of an abuse of process claim are "an ulterior motive and some further act after the issuance of process representing the perversion of the legitimate use of the process." *Simone v. Golden Nugget Hotel & Casino*, 844 F.2d 1031, 1036–37 (3d Cir. 1988) (quoting *Fielder Agency v. Eldan Constr. Corp.*, 377 A.2d 1220, 1222 (N.J. Super. Ct. 1977)). For the first element, malicious intent alone is insufficient—plaintiffs must show "some coercive or illegitimate use of the judicial process . . . ." *Id.* at 1037 (quoting *Fielder Agency*, 377 A.2d at 1222). The touchstone of the second element is that the defendant took some secondary act, such as "attachment, execution, garnishment, sequestration proceedings, arrest, [or] criminal prosecution." *D & D Assocs., Inc. v. Bd. of Educ. of N. Plainfield*, 2007 WL 4554208, at *31 (D.N.J. Dec. 21, 2007) (citing *Baglini v. Lauletta*, 768 A.2d 825, 832 (N.J. App. Div. 2001)),

*aff'd*, 552 F. App'x 110 (3d Cir. 2014). "[T]he ulterior motive can be inferred from the 'improper act,'" but if the act is proper, any motive is immaterial. *Zebrowski*, 657 F. Supp. 2d at 517.

Plaintiffs purport to describe six illegitimate acts that Defendants committed against them. (Pls.' Br. at 10–11 (listing the initial filing of the writ in the name of "Griffith Shaw," allowing the writ to remain on the docket for the second and third TD Bank levies, filing the January 2015 Notice of Motion to Turn Over Funds, co-opting Plaintiffs to get Griffith Shaw III to begin paying off his debt, and allowing a levy to be placed on the Capital One account).) Because the process against Plaintiffs began with the issuance of the writ and the first levy, they cannot constitute further acts. Without parsing the other acts Plaintiffs identify, the Court finds that the parties genuinely dispute whether Officer Rienzo was operating at Defendants' instructions and whether Defendants had an obligation to amend the writ to include a suffix once the first erroneous levy was brought to their attention. Plaintiffs cast the failure to correct the record as repeated acts evidencing impropriety and ulterior motive, constituting abuse of process (Pls.' Br. at 10); they argue that Defendants were willfully blind to the continuing wrongful levies based on the outstanding writ, in an effort to get paid at any cost. The material facts here are sufficiently disputed to overcome summary judgment on Plaintiffs' abuse of process claim.

## CONCLUSION

For the reasons stated herein, Defendants' Motion for Partial Summary Judgment is denied. An appropriate order will follow.

Date: *April 4, 2018*

*Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.